Julie Klein Fischer, ISB No. 4601
Laura E. Burri, ISB No. 3573
MORROW & FISCHER, PLLC
332 N Broadmore Way, Ste 102
Nampa, Idaho 83687
Telephone:  (208) 475-2200
Facsimile:   (208) 475-2201
*jfischer@morrowfischer.com*
*lburri@morrowfischer.com*

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRAD JANICEK, an individual, dba JANICEK FARMS, and BLUE DIAMOND TURF, LLC, an Idaho limited liability company,<br><br>          Plaintiffs,<br><br>-vs-<br><br>FIRST FRUITS HOLDINGS, LLC, a North Carolina limited liability company, dba, FOUR RIVERS ONION PACKING,<br><br>          Defendants. | CASE NO.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COME NOW, the Plaintiffs, Brad Janicek and Blue Diamond Turf, LLC, by and through their undersigned attorneys of record, the law firm of Morrow & Fischer, PLLC, and for their claims of relief and causes of action against the Defendant First Fruits Holdings, LLC, dba Four Rivers Onion Packing (hereinafter "First Fruits"), complain and allege as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Brad Janicek is individual residing in Ada County, Idaho. Brad Janicek sometimes does business under the assumed business name of Janicek Farms.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 1**

2.      Plaintiff Blue Diamond Turf, LLC, is an Idaho limited liability company with its principal place of business in Ada County, Idaho.

3.      Defendant First Fruits Holdings, LLC is a North Carolina limited liability company doing business in Washington County, Idaho. First Fruits operates in Idaho under the assumed business name of Four Rivers Onion Packing.

4.      This is a civil action over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499a, *et al.* This Court also has jurisdiction pursuant to 11 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00 and the parties are citizens of different States.

5.      This Court shares concurrent jurisdiction with the Courts of the State of Idaho in matters arising under the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions underlying this lawsuit occurred in this District.

## GENERAL ALLEGATIONS

7.      First Fruits is in the business of purchasing, packing, and reselling perishable agricultural commodities, including onions.

8.      In approximately June 2015, First Fruits purchased the assets of Four Rivers Packing Co., an Idaho corporation ("Four Rivers Packing") doing business in Washington County, Idaho.

9.      On or about September 25, 2015, Plaintiffs and First Fruits entered into a Contract to Buy or Handle yellow onions. A true and correct copy of the Contract to Buy or Handle is attached hereto as Exhibit A and incorporated herein by reference ("2015 Contract").

**COMPLAINT AND DEMAND FOR JURY TRIAL - 2**

10.     Although the 2015 Contract identifies Four Rivers Packing Co., that entity is not a party to the 2015 Contract.  Instead, it is believed Four Rivers Packing Co.'s form was used by First Fruits and the name was not corrected thereon.

11.     On or about July 20, 2016, Plaintiffs and First Fruits entered into a Contract to Buy or Handle thereby amending the 2015 Contract. A true and correct copy of the 2016 Contract to Buy or Handle is attached hereto as Exhibit B and is incorporated herein by reference.  The 2015 Contract and the 2016 Contract are referred to collectively hereinafter as the "Contract."

12.     The yellow onions subject to the Contract are considered "early onions" or "green top onions."

13.     Early or green top onions are highly perishable and not intended for long-term storage.

14.     The 2016 Contract was drafted by First Fruits.

15.     The Contract identified two separate fields from which the yellow onions would be purchased:

   a.  45,000 CWT yellow onions were to be purchased from a field located on Chinden and Ten Mile Roads for $8.00/CWT.  These onions were to be delivered before August 20, 2016 and are referred to within the Contract as "contract #1."

   b.  55,000 CWT yellow onions were to be purchased from a field located on Chinden and Black Cat Roads for $7.25/CWT.  These onions were to be delivered before August 31, 2016 and are referred to within the Contract as "contract #2."

**COMPLAINT AND DEMAND FOR JURY TRIAL - 3**

16.   The Contract includes that the yellow onions must be of a certain size and quality.

17.   In compliance with the Contract, Plaintiffs timely delivered yellow onions to First Fruits on the dates and in the amounts shown on Exhibit C attached hereto and incorporated herein by reference.

18.   The yellow onions delivered to First Fruits by Plaintiffs met the size and quality requirements set forth in the Contract.

19.   First Fruits had an opportunity to examine, inspect and observe the contracted yellow onions prior to and during delivery thereof.

20.   First Fruits took possession of the yellow onions delivered by Plaintiffs.

21.   First Fruits did not notify Plaintiffs, at any time before or during delivery of the yellow onions, that they failed to meet the Contract specifications for quality and/or size.

22.   First Fruits accepted the yellow onions in the quantities identified on Exhibit C attached hereto.

23.   Pursuant to the Contract, First Fruits was required to pay Plaintiffs the sum of $100,000.00 within ten days of completion of contract 1 deliveries.

24.   Deliveries under contract 1 of the Contract were completed on August 18, 2016, making the first payment under the Contract due on August 28, 2016.

25.   The Contract provides for a second payment of $100,000.00 within 40 days of the completion of deliveries under contract 1, or on September 27, 2016.

26.   The balance due, after the first two payments referenced in paragraphs 24 and 25 above, was to be paid to Plaintiffs as follows: ¼ on November 20, 2016; ¼ on December 20, 2016; $100,000.00 on January 20, 2017; $100,000.00 on February 20, 2017; and the balance on March 20, 2017.  The payment schedule is shown on Exhibit C attached hereto.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 4**

27.     First Fruits failed to make the first payment of $100,000.00 to Plaintiffs due on August 28, 2016.

28.     First Fruits called for inspection of the yellow onions by USDA Inspectors on September 3, 2016, September 7, 2016 and September 24, 2016.

29.     The yellow onions passed inspection on each date despite some expected decline in quality due to the length of time since delivery.

30.     The above-referenced USDA inspections were not timely.

31.     First Fruits failed to make the second payment of $100,000.00 to Plaintiffs due on September 27, 2016.

32.     First Fruits paid Plaintiffs the sums of $50,000.00 on September 5, 2016 and $25,000.00 on September 8, 2016.

33.     On September 30, 2016, First Fruits sent an email to Plaintiffs stating "we reject the contract."

34.     On September 30, 2016, Plaintiffs made demand for payment of all amounts then due under the Contract.  A true and correct copy of Plaintiffs' September 30, 2016 demand is attached hereto as Exhibit D.

35.     First Fruits has failed, refused and neglected to pay to Plaintiffs the amounts due as set forth in the Contract.

36.     On October 14, 2016, and as a result of First Fruits' breach, Plaintiffs accelerated all amounts due under the Contract.  A copy of the letter so informing First Fruits of the acceleration is attached hereto as Exhibit E, without attachments.

37.     Despite the purported "rejection" of onions, First Fruits is processing and packing the yellow onions delivered by Plaintiffs.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 5**

38.     First Fruits has sold some portion of the onions, delivered by Plaintiffs, in interstate commerce.

39.     The yellow onions delivered by Plaintiffs to First Fruits, and which remain in First Fruits possession are deteriorating.

40.     First Fruits has refused to allow Plaintiffs access to the yellow onions in First Fruits' possession.

41.     First Fruits' handling of the yellow onions after delivery by Plaintiffs is the cause of any decay or other quality related issues.

## COUNT I

### Breach of Contract

42.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

43.     The contracted yellow onions were timely delivered by Plaintiffs to First Fruits.

44.     The yellow onions delivered by Plaintiffs to First Fruits (as shown on Exhibit C) met the requirements of the Contract for size and quality at the time of delivery.

45.     The yellow onions delivered by Plaintiffs to First Fruits passed the USDA inspections called for by First Fruits based on the Contract requirements.

46.     First Fruits breached the Contract by untimely rejecting the yellow onions after acceptance thereof.

47.     First Fruits breached the Contract by failing to timely pay Plaintiffs the amounts due under the Contract for the yellow onions.

48.     First Fruits breached the Contract by mishandling and not timely packing the yellow onions delivered by Plaintiffs.

49.     Plaintiffs reserve this paragraph for the inclusion of a claim for punitive damages

**COMPLAINT AND DEMAND FOR JURY TRIAL - 6**

pursuant to Idaho Code § 6-1604.

50.     As a direct and proximate result of First Fruits breach(es) of the Contract, Plaintiffs have suffered damages in an amount to be proven at trial, but which amount exceeds $684,642.00.

## COUNT II

### Breach of the Covenant of Good Faith and Fair Dealing

51.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

52.     The Contract includes an implied covenant of good faith and fair dealing.

53.     First Fruits' above-described conduct breached the covenant of good faith and fair dealing.

54.     Plaintiffs reserve this paragraph for the inclusion of a claim for punitive damages pursuant to Idaho Code § 6-1604.

55.     As a result of First Fruits' wrongful conduct, Plaintiffs have suffered damages in an amount to be proven at trial but which amount exceeds $684,642.00.

## COUNT III

### Violations of the Uniform Commercial Code

56.     Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

57.     Pursuant to Idaho Code § 28-2-606, First Fruits accepted the yellow onions delivered under the Contract.

58.     First Fruits did not timely call for USDA inspections of the yellow onions delivered by Plaintiffs.

59.     First Fruits did not timely reject the onions.

60.     First Fruits' attempted revocation of acceptance, and/or rejection of the Contract

**COMPLAINT AND DEMAND FOR JURY TRIAL - 7**

(i.e. onions) on September 30, 2016 was untimely and wrongful.

61.    First Fruits mishandled the onions after taking possession of the same, including without limitation not timely packing the onions, storing the onions for too long, and exposing the yellow onions to weather and the elements thereby damaging the same.

62.    First Fruits failed to make payment for the onions in breach of the Contract.

63.    As a result of First Fruits acts and/or omissions, Plaintiffs have suffered damages in an amount to be proven at trial but which amount exceeds $684,642.00.

**COUNT IV**

**Unjust Enrichment**

64.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

65.    Plaintiffs conferred a benefit upon First Fruits by delivering yellow onions to First Fruits for resale.

66.    It would be inequitable for First Fruits to retain the yellow onions and resell the same without paying Plaintiffs for the same.

67.    As a result of First Fruits acts and/or omissions, Plaintiffs have suffered damages in an amount to be proven at trial but which amount exceeds $684,642.00.

**COUNT V**

**Declaratory Relief Validating PACA Trust Claim**
**7 U.S.C. § 499e(c)3**

68.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

69.    First Fruits is licensed under the Perishable Agricultural Commodities Act of 1930, as amended, ("PACA") License Number 20150931.

70.    First Fruits is a commission merchant, dealer, or broker subject to PACA.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 8**

71.     In compliance with 7 U.S.C. § 499e(c)(3), Plaintiffs timely served First Fruits with Notice of Intent to Preserve Trust Benefits.  A copy of the Notice is attached hereto as Exhibit F, without attachments and incorporated herein.

72.     Plaintiffs delivered yellow onions to First Fruits, on the dates and in the amounts set forth on Exhibit C attached hereto.

73.     First Fruits accepted the yellow onions identified on Exhibit C, upon delivery.

74.     The yellow onions delivered by Plaintiffs to First Fruits have been and are expected to be shipped in interstate commerce.

75.     Under PACA, 7 U.S.C. § 499e(c), at the time First Fruits received the yellow onions, it became a statutory trustee of the PACA trust for the benefit of Plaintiffs in the amount of the purchase price therefore.

76.     The *res* of the PACA trust includes: i) the inventory of yellow onions retained by First Fruits; ii) products derived from the yellow onions ("Products"); iii) accounts receivable and proceeds from the sale of yellow onions and/or Products (collectively "Proceeds"); and iv) assets commingled with, purchased with or otherwise acquired with the Proceeds.  Assets subject to the PACA trust are hereinafter referred to as the "PACA Trust Assets."

77.     First Fruits failed to make the agreed upon payments for the yellow onions delivered by Plaintiffs.

78.     According to 7 U.S.C. § 499e(c), Plaintiffs are unpaid suppliers and sellers of produce and are entitled to PACA trust protection and payment from First Fruits' PACA Trust Assets.

79.     Plaintiffs seek entry of an Order declaring that they hold valid PACA trust claims in the amount of $684,642.00 against First Fruits, and that their valid PACA trust claims include

**COMPLAINT AND DEMAND FOR JURY TRIAL - 9**

interest, attorneys' fees and costs.

## COUNT VI

### Enforcement of Payment from PACA Trust Assets
### 7 U.S.C. § 499e(c)(5)

80.    Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

81.    First Fruits is in possession, custody and control of PACA Trust Assets that must be held for the Plaintiffs' benefit.

82.    First Fruits failed to use the PACA Trust Assets to pay Plaintiffs for the yellow onions identified on Exhibit C.

83.    As a result of First Fruits' failure to pay, Plaintiffs have suffered damages in the amount of $684,642.00, plus interest, costs and attorneys' fees.

84.    Plaintiffs seek an Order directing First Fruits to immediately pay Plaintiffs as beneficiaries of the PACA trust, PACA Trust Assets equal to the sum of $684,642.00, plus interest, costs and attorneys' fees.

## COUNT VII

### Violation of PACA: Failure to Pay
### 7 U.S.C. § 499b(4)

85.    Plaintiffs reallage the preceding paragraphs as if fully set for the herein.

86.    First Fruits received the yellow onions on the dates and in the quantities set forth on Exhibit C attached hereto.

87.    PACA requires First Fruits to timely pay for the yellow onions delivered by Plaintiffs.

88.    First Fruits wrongfully rejected the onions that were delivered by Plaintiffs in accordance with the terms of the Contract without reasonable cause.

**COMPLAINT AND DEMAND FOR JURY TRIAL -** 10

89.     First Fruits failed to pay for the onions delivered by Plaintiffs within the payment terms required.

90.     Plaintiffs incurred damages resulting from First Fruits' failure to timely pay the amounts due under the Contract, plus interest, costs and attorneys' fees.

91.     Plaintiffs seek an order directing First Fruits to immediately pay Plaintiffs the sum of $684,642.00, plus interest, costs and attorneys' fees.

## COSTS AND FEES

92.     Plaintiffs are entitled to attorney fees and costs under Idaho Code §§ 12-120, 12-121, and Idaho Rule of Civil Procedure 54 and any other applicable state or federal laws, in the amount of $7,500.00 if the matter is taken by default; or if contested in an amount determined by the Court.

## DEMAND FOR JURY TRIAL

93.     Plaintiffs demand a trial by jury composed of no less than six (6) persons on all issues so triable, pursuant to Federal Rule of Civil Procedure 38(b).

## PRAYER FOR RELIEF

Plaintiffs request the following:

1.      On Counts I through VII, entry of Judgment against First Fruits in an amount to be proven at trial, but which amount exceeds $684,642.00, plus interest, costs and attorneys' fees.

2.      On Count V, an Order declaring that Plaintiffs hold a valid PACA trust claim in the amount of $684,642.00 against First Fruits, and that Plaintiffs' valid PACA trust claim includes interest from the date said amount became due, together with costs and attorneys' fees.

**COMPLAINT AND DEMAND FOR JURY TRIAL** - 11

3.      On Count VI and VII, an Order directing First Fruits to immediately pay Plaintiffs

the sum of $684,642.00, plus interest, costs and attorneys' fees.

4.      For such other and further relief as the Court deems just and equitable.

DATED this 8th day of November, 2016.

                                    MORROW & FISCHER, PLLC

                                    By:_____/s/ Julie Klein Fischer
                                        Julie Klein Fischer
                                        Attorneys for Plaintiffs

# EXHIBIT A

# CONTRACT TO BUY OR HANDLE

FOUR RIVERS PACKING CO., Weiser, Idaho, hereinafter referred to as BUYER, has this day agreed to *Contract*
*(Buy, handle, or contract)*

*9780% BRAD JANICEK*
from *10% BLUE DIMOND TURF*, hereinafter referred to as GROWER, and the said Grower has this day agreed to
*Contract* to the Buyer, the following described produce: *Blood guts & feathers*
*(Sell, consign, or contract)*

| Quantity | Commodity | Grade | Size | Price or Basis of Handling | |
|---|---|---|---|---|---|
| 50 acres | Granted | Ylow Onions | Field Run | | before Aug 1 |
| 50 acres | Granted | Yellow ment | Field Run | 725 cwt | Sept 1 dadline |

The parties hereto further agree as follows:

1. Buyer will specify field(s). The onions described above must meet 75% 3-1/2 minimum requirements. If the onions do not meet the minimum specifications, they will be subject to a one cent per CWT deduction from the contract price for each percent below the 75% 3-1/2 minimum. In the event the onions fail to make minimum size requirements, they will be state inspected at the Grower's expense.

2. The contract onions that have excessive tops, seeders, sun scald, neck rot, or butt rot, will be state inspected at Grower's expense. Excessive defect is defined as 10% or more. The average percent of defects will be deducted from the CWT price at the rate of one cent for each percentage point of defect.

3. Buyer shall have the option to accept or refuse any part or all of the contract onions affected by paragraphs 1 and 2 in excess of 10%. Any onions accepted under this right of refusal will be renegotiated. Onions refused will return to grower ownership and all storage and packing related fees will apply.

4. The onions will be packed at Four Rivers Packing Co., Weiser, Idaho. The time of delivery of the contract onions is as requested. The terms of payment shall be as follows: 1/4 Nov 20, 1/4 Dec.20, 1/4 Jan. 20, 1/4 Feb 20, all personal storage and packer related fees will be deducted prior to final payment *Remainder of contract on this schedule*

5. If Buyer shall furnish seed, supplies, materials or labor to Grower, there shall be no warranty on behalf of Buyer as to the quality of seed, supplies or material, nor as to the fitness for the purpose intended, and in the case of seed there shall be no warranty, expressed or implied, that the same is true to name or of any specific variety or will germinate. Any such courtesies or labor provided by Buyer will be deducted prior to remittance unless otherwise specified herein.

6. Grower is required to match like amount of personal onion on an open market basis. Acres: *H & X* CWT: _____ Variety: _____

7. If personal onions are stored at Four Rivers Packing controlled facilities, personal storage and packer related fees will be deducted from contract remittances. If stored off site of Four Rivers Packing controlled facilities, any applicable grower assessments will be deducted prior to remittance. If any part of said crop is handled on a marketing basis and requires the services of the brokerage connections of Buyer, a deduction will be made covering their customary selling and distributing charge in addition to the charge provided herein for F.O.B. sales service.

8. Grower agrees that if he fails for any reason other than aforesaid to deliver produce described at point or points designated, Buyer shall have the right at Grower's expense to take possession of said produce and harvest and deliver same F.O.B. warehouse, and to deduct cost of his service from the purchase price or proceeds at time of settlement. If grower fails to deliver, buyer also retains the right to replace said produce at market price at the expense of the grower.

9. In the event of fire, strikes, wars, acts of God or other events beyond the control of the Buyer/Seller, which prevent the Buyer/Seller from performance in full or in part of the terms of this contract, it is agreed that such failure of performance shall be excused and shall not form the basis for any claim of damages or breach of this contract.

10. Grower hereby gives Buyer a lien upon all produce and crops owned by him and upon the proceeds of sale thereof for any and all advances made to him by the Buyer for payment to Buyer of the compensation herein provided for its services and for any damages sustained by Buyer by reason of any default or breach by Grower. Buyer shall have hereunder all the rights of Chattel mortgage and to insure the payment of such lien Grower hereby assigns the Buyer all proceeds from said produce or crops necessary for such payment.

11. In the event the Grower shall default in the performance of this agreement, Buyer shall have all rights available at law or equity including all rights conferred under this agreement. Grower will be responsible to pay any reasonable attorney fees incurred by Buyer as a result of default.

12. All goods shall be sound, merchantable, free from imperfections, rain damage, hail damage, disease, pest infections, etc.; of kind, quality, grade and pack above specified; and shall conform to State and Federal rules and regulations for such goods in force at point of delivery or shipment as evidenced by State and Federal inspection certificate to be furnished by Grower; and shall also meet all United States Pure Food and Drug Acts, Rules, Regulations, and requirements.

13. It is further understood and agreed that this contract contains the entire agreement between the parties with respect to the subject matter hereof and that no agent or buyer shall be authorized to make any modifications hereof unless the same shall be written hereon.

14. The parties hereto further agree to the following special conditions: *10 days After First 50% $100,000 penalty at delivery, then 90 days after first 50% $100,000 payment, balance of both contracts on Normal schedule*

Dated this *25* day of *September* 20 *15*

FOUR RIVERS PACKING CO.

By: _____ and _____
   *(Buyer)*                              *(Grower/Seller)*  *Brad Janicek*

Grower Lien Holder: _____  Address: *953 E. Rivergony Drive Eagle Id.*
   (If applicable)
                                             *Blue Dimond Turf*

40642/706rev.

# EXHIBIT B

# CONTRACT TO BUY OR HANDLE

FOUR RIVERS ONION PACKING, Weiser, Idaho, hereinafter referred to as BUYER, has this day agreed to Buy on contract from Brad Janicek Farms & Blue Diamond Turf, hereinafter referred to as GROWERS, and the said Growers has this day agreed to sell on contract to the Buyer, the following described produce:

| CONTRACT | QTY | COMMODITY | GRADE | SIZE | PRICE |
|---|---|---|---|---|---|
| Contract #1 - Chinden/10 Mile | 45,000 CWT | Yellow Onion | See #2 | See #1 | $8.00/CWT |
| Contract #2 - Chinden/Black Cat | 55,000 CWT | Yellow Onion | See #2 | See #1 | $7.25/CWT |

The parties hereto further agree as follows:

1. Buyer will specify field(s). The onions described above must meet 75% 3-1/2" minimum requirements. If the onions do not meet the minimum specifications they will be subject to a one cent per CWT deduction from the contract price for each percent below the 75% 3-1/2" minimum. In the event the onions fail to make minimum size requirements, they will be state inspected at the Grower's expense.

2. The contract onions that have excessive tops, seeders, sun scald, neck rot, or butt rot, will be state inspected at Grower's expense. Excessive defect is defined as 10% or more. The average percent of defects will be deducted from the CWT price at the rate of one cent for each percentage point of defect.

3. Buyer shall have the option to accept or refuse any part or all of the contract onions affected by paragraphs 1 and 2 in excess of 10%. Any onions accepted under this right of refusal will be renegotiated. Onions refused will return to grower ownership and all storage and packing related fees will apply.

4. The onions will be packed at Four Rivers Onion Packing, Weiser, Idaho. The period of delivery of the contract onions is as requested:
   - **45,000 CTW by 8-20-16**
   - **The additional 55,000 CTW (+/- 2,500 CTW) by 8-31-16**
   - **See #15 for details of delivery**

The terms of payment shall be as follows:
   - **$100,000 within 10 days of the completion of the first contract delivery**
   - **$100,000 within 40 days of the completion of the first contract delivery**
   - **The balance to be paid as follows: 1/4 on Nov 20, 1/4 on Dec.20, $100,000 on Jan. 20, $100,000 on Feb 20 & the balance on Mar 20**

Any personal storage and packer related fees will be deducted prior to final payment

5. If Buyer shall furnish seed, supplies, materials or labor to Grower, there shall be no warranty on behalf of Buyer as to the quality of seed, supplies or material, nor as to the fitness for the purpose intended, and in the case of seed there shall be no warranty, expressed or implied, that the same is true to name or of any specific variety or will germinate. Any such courtesies or labor provided by Buyer will be deducted prior to remittance unless otherwise specified herein.

6. Growers are required to match like amount of personal onions on an open market basis. Acres: 0 CWT; Variety: NA

7. If personal onions are stored at Four Rivers Packing controlled facilities, personal storage and packer related fees will be deducted from contract remittances. If stored off site of Four Rivers Packing controlled facilities, any applicable grower assessments will be deducted prior to remittance. If any part of said crop is handled on a marketing basis and requires the services of the brokerage connections of Buyer, a deduction will be made covering their customary selling and distributing plan in addition to the charge provided herein for F.O.B. sales service.

8. Growers agree that if they fail for any reason other than aforesaid to deliver produce described at point or points designated, Buyer shall have the right at Grower's expense to take possession of said produce and harvest and deliver same F.O.B. warehouse, and to deduct cost of his service from the purchase price or proceeds at time of settlement. If growers fail to deliver, buyer also retains the right to replace said produce at market price at the expense of the growers.

9. In the event of fire, strikes, wars, acts of God or other events beyond the control of the Buyer/Seller, which prevent the Buyer/Seller from performance in full or in part of the terms of this contract, it is agreed that such failure of performance shall be excused and shall not form the basis for any claim of damages or breach of this contract.

10. Growers hereby gives Buyer a lien upon all produce and crops owned by him and upon the proceeds of sale thereof for any and all advances made to him by the Buyer for payment to Buyer of the compensation herein provided for its services and for any damages sustained by Buyer by reason of any default or breach by Grower. Buyer shall have hereunder all the rights of Chattel mortgage and to insure the payment of such lien Grower hereby assigns the Buyer all proceeds from said produce or crops necessary for such payment.

11. In the event the Growers shall default in the performance of this agreement, Buyer shall have all rights available at law or equity including all rights conferred under this agreement. Grower will be responsible to pay any reasonable attorney fees incurred by Buyer as a result of default.

12. All goods shall be sound, merchantable, free from imperfections, rain damage, hail damage, disease, pest infections, etc.; of kind, quality, grade and pack above specified; and shall conform to State and Federal rules and regulations for such goods in force at point of delivery or shipment as evidenced by State and Federal inspection certificate to be furnished by Grower; and shall also meet all United States Pure Food and Drug Acts, Rules, Regulations, and requirements.

13. Growers shall get GAP or other 3rd party audit on all fields pertaining to this purchase and list Buyer as a party with access to the audit.

14. It is further understood and agreed that this contract contains the entire agreement between the parties with respect to the subject matter hereof and that no agent or buyer shall be authorized to make any modifications hereof unless the same shall be written hereon.

15. The parties hereto further agree to the following special conditions:

- **Delivery of Contract #1 to Four Rivers Onion Packing to begin on August 10, 2016 with 5,000 CTW per day with the entire quantity of 45,000 CTW delivered by August 20.**
- **Delivery of Contract #2 to Four Rivers Onion Packing to begin as determined by both parties, with the understanding that the entire quantity of 55,000 (+/- 2,500 CTW) to be delivered by August 31, 2016.**

Dated this 20th day of July, 2016

By: _Sean P. Swanson_

(Buyer)
FOUR RIVERS ONION PACKING
390 Feltham Road
Weiser, ID 83672

By:

(Grower)
Brad Janicek Farms

(Grower)
Blue Diamond Turf

Grower Lien Holder:

# EXHIBIT C

Janicek & Blue Diamond Turf
Onion Deliveries to First Fruit / Four Rivers
Early Yellow Onions

| Delivery Date | Weight # | Contract Price |
|---|---|---|
| **Contract #1** | | $8.00/CWT |
| 8/10/2016 | 419,400 | |
| 8/11/2016 | 569,820 | |
| 8/12/2016 | 585,220 | |
| 8/13/2016 | 472,640 | |
| 8/14/2016 | 294,370 | |
| 8/15/2016 | 286,400 | |
| 8/16/2016 | 642,120 | |
| 8/17/2016 | 755,200 | |
| 8/18/2016 | 621,770 | |
| Total | 4,646,940 | |
| | | |
| **Contract #2** | | $7.25/CWT |
| 8/22/2016 | 987,520 | |
| 8/23/2016 | 1,002,600 | |
| 8/24/2016 | 892,240 | |
| 8/25/2016 | 951,370 | |
| 8/26/2016 | 936,560 | |
| 8/27/2016 | 595,080 | |
| Total | 5,365,370 | |
| Grand Total | 10,012,310 | |

Payment Schedule under Contract:

| Payment Due Date | | Payment Amount | Remaining Balance |
|---|---|---|---|
| August 28, 2016 | | $100,000.00 | $659,642.48 |
| September 27, 2016 | | $100,000.00 | $559,642.48 |
| November 20, 2016 | 25% | $139,910.62 | $419,731.86 |
| December 20, 2016 | 25% | $139,910.62 | $279,821.24 |
| January 20, 2017 | | $100,000.00 | $179,821.24 |
| February 20, 2017 | | $100,000.00 | $79,821.24 |
| March 20, 2017 | Balance | $79,821.24 | 0.00 |

Payments Received:

| Payment Date | Payment Amount | |
|---|---|---|
| September 5, 2016 | $50,000.00 | |
| September 8, 2016 | $25,000.00 | |

# EXHIBIT D



**MORROW & FISCHER**

ATTORNEYS AT LAW

332 N. Broadmore Way, Ste. 102

Nampa, Idaho 83687

208.475.2200

Fax 208.475.2201

www.morrowfischer.com

September 30, 2016

*Sent via Email (S.swanson@fourriversonion.com)*

Sean Swanson
Four Rivers Packing, Co.
390 Feltham Rd.
Weiser, ID 83672

     *Re:    Janicek*

Dear Mr. Swanson:

We represent Brad and Josh Janicek and Blue Diamond Turf (collectively "Janicek") in connection with the *Contract to Buy or Handle* entered into between Janicek and Four Rivers Packing Co. ("Four Rivers) dated September 25, 2015 and amended July 20, 2016 (the "Contract").

As you know, Janicek began delivering onions to Four Rivers under the Contract on August 10, 2016.   Delivery was complete on the first portion (first contract) August 18, 2016. Delivery of onions under the second portion (contract two) started on August 22, 2016 and was completed on August 27, 2016.

Pursuant to the terms of the Contract, Four Rivers was required to pay $100,000.00 to Janicek "within 10 days of completion of the first contract delivery," or August 28, 2016.  A second payment of $100,000.00  was to be made "within 40 days of the completion of the first contract delivery" or September 27, 2016.  Neither of those payments has been made and instead Four Rivers paid Janicek only $75,000.00, to date.

On September 30, 2016, and after being pressed to honor the Contract by making the required payments, you emailed Josh Janicek stating,  "I need to inform you that we are rejecting the contract signed on July 20th, 2016 and intend to run your onions and take deductions according to shrink weight.  Payment will begin on November 20th, 2016, but deductions will be across the 5 payments remaining."

---

George W. Breitsameter   ◆   Laura E. Burri   ◆   Julie Klein Fischer   ◆   William A. Morrow

Swanson Letter
September 30, 2016
Page two

_____

The purpose of this letter is to advise you that that rejecting the Contract and altering the payment terms are not remedies available to Four Rivers either at law or under the Contract. Likewise, deductions are not appropriate under the circumstances of this matter.

Four Rivers accepted the onions, caused them to be inspected at least twice, and has packaged and sold a portion of the Janicek's crop. Four Rivers has breached the Contract by not timely paying Janicek for the onions delivered. **Accordingly, demand is made that Four Rivers pay the full amount due under the Contract of $125,000.00 before 5:00 today.**

We look forward to your cooperation and encourage you to review the Contract with counsel if you have any questions about Four Rivers' obligations thereunder.

Sincerely,

MORROW & FISCHER, PLLC

Julie Klein Fischer

C: Dennis Ujiiye

# EXHIBIT E



332 N. Broadmore Way, Ste. 102

Nampa, Idaho 83687

208.475.2200

Fax 208.475.2201

www.morrowfischer.com

**MORROW & FISCHER**

ATTORNEYS AT LAW

October 14, 2016

*Sent via Email (gbrowne@mccarronlaw.com)*

Gregory A. Browne
McCarron & Diess
4530 Wisconsin Avenue, N.W., Suite 301
Washington, DC 20016

   Re: *First Fruit Holdings, d/b/a Four Rivers - Janicek*

Dear Mr. Browne:

  Although we have exchanged several emails and spoke by phone on October 13, 2016, this letter responds to your correspondence dated October 7, 2016.

  First, we disagree with your client's assertion that the Growers (Brad Janicek and Blue Diamond Turf) breached the Yellow Onion Contract, failed to deliver onions with less than ten percent defects, and repudiated the Red Onion Contract.

  The following facts are relevant to this response:

  Onion deliveries under "contract #1" of the Yellow Onion Contract began on August 10, 2016 and finished on August 18, 2016.   Delivery of the onions under "contract #2" began on August 22, 2016 and was completed on August 27, 2016.  Notably, at no time during delivery of the onions did anyone at First Fruit Holdings ("First Fruit") reject the product or indicate any problems with the quality thereof. To the contrary, the Growers were advised the product "looks good."  No inspection of the onions was made during delivery.

  Pursuant to the Yellow Onion Contract, the first payment for the onions, in the amount of $100,000.00, was due on August 28, 2016.  First Fruit failed to make the payment when due.

  On September 3, 2016 (after failing to make the required payment) First Fruit called for an inspection of the onions.  Although timing of the inspection was suspect, my clients were present to observe the inspection as were Sean Swanson and Ken Stewart.  The parties discussed the contract criteria and *collectively* directed the inspection to focus on defects relevant to the

---

George W. Breitsameter &#9670; Laura E. Burri &#9670; Julie Klein Fischer &#9670; William A. Morrow

Gregory Brown
October 14, 2016
Page 2

_____

contract.   Using those parameters, the inspector found the percentage of defects to be 3.74% and 3.01%.

On September 5, 2016 First Fruit paid the Growers $50,000.00.

Despite meeting the contractual requirements of the Contract, First Fruit caused the Growers' onions to be inspected a second time, on September 7. The stated explanation for the second inspection was the onions should have been inspected as U.S. No. 1 yellow onions.   My clients were not given sufficient notice to attend the September 7 inspection.   The second inspection revealed that all of the onions, except for a delivery on August 15, graded as 90% or more U.S. No. 1.

First Fruit paid the Growers $25,000.00 on September 8, 2016.

For reasons we can only speculate about, First Fruit called a third inspection on September 24, 2016. Based on the records provided by First Fruit, it appears that at least some of the Growers' onions had been sold as of the dates of the second and third inspections.

On September 30, 2016 First Fruit notified Josh Janicek via email that the "contract is rejected." *See* email from Sean Swanson to Josh Janicek, dated September 30, 2016 and attached hereto.  Although it is not clear what is meant by "rejection of the contract" the allegation is that onions did not grade as U.S.No.1 with less than 10% defects.  Notably, however, the contract does not require U.S. No. 1 grade onions be delivered.

Pursuant to Idaho Code 28-2-606 First Fruit accepted the Growers' onions.  It signified during delivery they were good onions, did not timely reject the onions, and engaged in acts inconsistent with the Growers ownership by paying for at least a portion of the onions, and presumably packaging and selling a portion thereof.

Furthermore, even if First Fruit had grounds to revoke its' acceptance, which it did not, it was required to do so within a reasonable time _and_ before any substantial change in the condition of the goods.  That did not occur and any attempted revocation of the acceptance is ineffective, wrongful, and entitles the Growers to damages against First Fruit.

With respect to damages allegedly suffered by First Fruit, your analysis is wrong, and any suggestion First Fruit can simply offset its fictitious damages against the amounts it owes the Growers, is contrary to both the contract terms and the law.

Thus, the facts are that First Fruit breached its agreement with the Growers and ignored their demand for payment.  Accordingly, my clients deem all amounts due under the contract to be immediately due and payable.

Gregory Brown
October 14, 2016
Page 3

_____

Regarding the Red Onion contract, it is established that late payments (or the failure to pay) is justification under Idaho Code § 28-2-609 to request adequate assurance of performance. The Growers request for said assurances was made on October 7, 2016 and they are entitled to suspend delivery until receipt of the same (which must be made within a reasonable time). Your statement that the Growers failed to perform under the Red Onion Contract (or repudiated the same) is not accurate. There is no stated delivery date therein and it was clear from the October 7, 2016 letter that the Growers are prepared to deliver the onions upon receipt of the required assurances. That remains the case.

Further, we appreciate the acknowledgement in your letter that the Perishable Agricultural Commodities Act ("PACA") applies to these transactions. In that regard, please see the attached *Notice of Intent to Preserve Trust Benefits* under PACA. The Notice will be delivered to the addressees today.

Finally, as I mentioned in our conversation yesterday, I have prepared a Complaint against First Fruit Holdings, LLC and Four Rivers Packing. A draft of the Complaint is attached. We are willing to discuss resolution with you short of filing the Complaint, but unless we have some indication from your client it is willing to negotiate in good faith, we will file the Complaint no later than Tuesday of next week.

Sincerely,

MORROW & FISCHER, PLLC

Julie Klein Fischer

Encl.
C:    Brad Janicek
      Josh Janicek/Blue Diamond Turf

# EXHIBIT F



332 N. Broadmore Way, Ste. 102
Nampa, Idaho 83687
208.475.2200
Fax 208.475.2201
www.morrowfischer.com

**MORROW & FISCHER**
ATTORNEYS AT LAW

October 14, 2016

### NOTICE OF INTENT TO PRESERVE TRUST BENEFITS
### UNDER THE PERISHABLE AGRICULTURAL COMMODITIES ACT

*Sent via Email and Regular Mail*

Sean Swanson                                    Janine Smith, Registered Agent
First Fruit Holdings, LLC                       Four Rivers Packing Co.
d/b/a Four Rivers Onion Packing                 1587 Loafer Lane
390 Feltham Road                                Weiser, Idaho 83672
Weiser, Idaho 83672

Dear Mr. Swanson and Ms. Smith:

This Notice is being sent on behalf of the following growers with whom First Fruit Holdings, LLC and/or Four Rivers Packing Co., LLC have contracted for the purchase and sale of onions grown in 2016:

Growers:

Brad Janicek                                    Blue Diamond Turf
953 E Riversong                                 P. O. Box 1910
Eagle, ID 83616                                 Eagle, Idaho 83616

There are two contracts at issue. First, the September 25, 2015 Contract to Buy or Handle, amended on July 20, 2016 for 1,000,000 pounds of early yellow onions ("Yellow Onion Contract") and the September 25, 2015 Contract to Buy or Handle for 10,000 pounds of red onions ("Red Onion Contract"). Copies of both the Yellow Onion Contract and Red Onion Contract are attached hereto as Exhibits 1 and 2, respectively, and incorporated herein.

The deliveries made pursuant to the Yellow Onion Contract, price for the onions and the payment terms are set forth on Exhibit 3 attached hereto and incorporated herein.

The amount due under the Yellow Onion Contract is $684,642.00.[1]

Twenty acres of red onions have been harvested and are being held for delivery pending adequate assurances (requested on October 7) that First Fruit Holdings and/or Four Rivers Packing Co., can

---

[1] Pursuant to the Yellow Onion Contract terms, the amount currently past due is $125,000.00. However, due to First Fruit Holdings and/or Four Rivers Packing breach of the contract, the Growers have elected to accelerate all amounts due and owing thereunder.

George W. Breitsameter   ◆   Laura E. Burri   ◆   Julie Klein Fischer   ◆   William A. Morrow

Notice of Intent to Preserve Trust Benefits
October 14, 2016
Page Two

---

perform the buyer's obligations under the Red Onion Contract.   Payment terms for the Red Onion Contract are set forth therein.

The following notice is hereby given on behalf of the above-referenced growers:

**The perishable agricultural commodities identified in the Yellow Onion Contract and Red Onion Contract are sold subject to the statutory trust authorized by Section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.**

Please direct any questions or communications regarding this Notice to me.

Sincerely,

MORROW & FISCHER, PLLC

Julie Klein Fischer

Attorneys for Blue Diamond Turf, LLC and Brad Janicek, d/b/a Janicek Farms.

Attachments:            Exhibit 1: Yellow Onion Contract
                        Exhibit 2: Red Onion Contract
                        Exhibit 3: Delivery and Payment Terms

C:      Gregory Brown (via email and regular mail)
        John Fowler (via email and regular mail)