IN THE UNITED STATES COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRAD JANICEK d/b/a JANICEK FARMS and BLUE DIAMOND TURF, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> FIRST FRUITS HOLDINGS, LLC d/b/a FOUR RIVERS ONION PACKING, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br><br> Case No. 1:16-CV-489-DVB <br><br> Judge Dee Benson |

Before the Court is Defendant's Motion to Dismiss Plaintiff's fifth and sixth causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion has been fully briefed and a hearing was held before the Court in Boise, Idaho on June 8, 2017. Plaintiffs were represented at the hearing by Julie Klein Fischer. Defendant was represented by Patrick Mahoney and Gregory Brown. Based on the parties' written and oral arguments and on the relevant facts and the law, the Court enters the following Order.

**BACKGROUND**

Plaintiff Brad Janicek is an onion grower who resides in Ada County, Idaho and does business as Janicek Farms. Complaint, Dkt. 1 at ¶1. Plaintiff Blue Diamond Turf, LLC is an Idaho company with its principle place of business in Ada County, Idaho. *Id*. at ¶2. Defendant First Fruits Holdings, LLC is a North Carolina company in the business of purchasing, packing and reselling perishable agricultural commodities, including onions. *Id*. at ¶¶ 3, 7. In June 2015, First Fruits purchased the assets of Four Rivers Packing Co., an Idaho corporation. *Id*. at ¶8.

On September 25, 2015 and July 20, 2016, Plaintiffs and First Fruits entered into agreements with each other, both of which are entitled "Contract to Buy or Handle," for the sale, purchase and delivery of yellow onions. The agreements constitute the contract ("the Contract") between the parties and provide that Plaintiffs would deliver to Defendant 100,000 hundred-weight of onions in exchange for payment from Defendants to be made as follows: $100,000 within 10 days of the completion of the first delivery; $100,000 within 40 days of the completion of the first delivery; one-quarter of the balance due on November 20, 2016; one-quarter of the balance due on December 20, 2016; $100,000 due on January 20, 2017; $100,000 on February 20, 2017 and the remaining balance due on March 20, 2017. *See* Complaint at ¶¶ 9-11 & Exhs. A & B.

Pursuant to the terms of the Contract, Plaintiffs delivered onions to Defendant's facility in Weiser, Idaho from August 10 through August 27, 2016. *Id.* at Exh. C. Accordingly, Defendant's first payment was due on August 28, 2016 in the sum of $100,000 and the second payment was due on September 27, 2016, also in the sum of $100,000. *Id*. at ¶ 24. Defendant

failed to make the first payment on the date due and instead made a payment of $50,000 on September 5, 2016 and a payment of $25,000 on September 8, 2016. *Id*. at ¶¶ 27 & 32. First Fruits failed to make the second payment of $100,000 which was due on September 27, 2016. Complaint at ¶ 31.

On September 30, 2016, Defendant emailed the following to Plaintiffs:

> I need to inform you that we are rejecting the contract signed on July 20th, 2016 and intend to run your onions and take deductions according to shrink weight. Payment will begin on November 20, 2016 but deductions will be across the 5 payments remaining.

*Id*. at ¶ 33-34. On September 30, 2016, Plaintiffs made demand for full payment then due under the Contract. See Exh. D. On October 7, 2017, Defendant's counsel delivered a letter to Plaintiffs' counsel in which Defendant alleged Plaintiffs had breached the Contract due to the condition of the onions delivered.

On October 14, 2016, Plaintiffs sent a Notice of Intent to Preserve Trust Benefits Under the Perishable Agricultural Commodities Act ("Trust Notice"). On the same date, Plaintiffs accelerated all amounts due under the Contract. *Id*. at ¶ 36 and Exh. E.

Plaintiffs filed this lawsuit on November 8, 2016. The Complaint asserts seven causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) violation of the uniform commercial code; (4) unjust enrichment; (5) declaratory judgment for violation of the Trust provisions of the Perishable Agricultural Commodities Act ("PACA"); (6) enforcement of Plaintiffs' PACA Trust rights; and (7) violation of the unfair conduct provisions of PACA.

Defendants move to dismiss Plaintiffs' fifth and sixth causes of action on the basis that Plaintiffs are not entitled to relief under PACA's Trust provisions for two independent reasons: (1) the Contract's payment terms do not comply with the requirements necessary for PACA trust benefits; and (2) Plaintiffs did not preserve any PACA trust rights. Both of these positions are discussed below.

## ANALYSIS

<u>Plaintiffs' Eligibility for PACA Trust Benefits</u>

PACA was enacted in 1930 to prevent unfair business practices and promote financial responsibility in the fresh fruit and produce industry. *See Sunkist Growers, Inc., v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997). Congress amended PACA in 1984 to further protect grower-sellers by establishing the PACA trust. *Id.* The PACA trust requires all commission merchants, dealers, or brokers to hold all perishable commodities purchased on short-term credit, as well as sales proceeds, in trust for the benefit of unpaid sellers until full payment is made. 7 U.S.C. § 499(c)(2); *see also*, *Perfectly Fresh Farms, Inc. v. U.S. Dept of Agric.*, 692 F.3d 960, 967 n.6 (9th Cir. 2012). The claims of PACA trust beneficiaries are elevated above all creditors, even secured creditors. *Bowlin & Son, Inc., v. San Joaquin Food Serv., Inc.* (*In re San Joaquin Food Serv., Inc.*), 958 F.2d 938, 939 (9th Cir. 1992). Congress vested the Secretary of the USDA with the authority to "make such rules, regulations and orders as may be necessary to carry out the provisions of" PACA. 7 U.S.C. § 499o. Pursuant to that authority, the Secretary promulgated 7 C.F.R. § 46.46, entitled "Statutory Trust," to provide clarity on the rights and obligations of

parties asserting trust rights under PACA.

## A. Contract Payment Terms

In order for a seller to be eligible for PACA trust benefits, the parties must have agreed prior to the transaction that "the maximum time for payment for a shipment be 30 days after receipt and acceptance of the commodities." 7 C.F.R. § 46.46(e)(2). The purpose of this limitation is to extend trust benefits only to those produce sellers who expect to receive prompt payment, defined as "10 days after the day on which the produce is accepted" for the goods delivered. 7 C.F.R. § 46.2(aa)(5). *Overton Distrubs. v. Heritage Bank*, 340 F.3d 361, 367 (6th Cir. 2003) ("Congress's purpose in enacting PACA was to protect sellers delivering their produce on essentially cash terms, not to provide protection to sellers who are willing to extend payment terms beyond the statutory maximum."). The Ninth Circuit has consistently required "literal" compliance with PACA's provisions. *In re San Joaquin Food Serv., Inc.*, 958 F.2d at 940; *see also, In re Altabon Foods,* Inc., 998 F.2d at 718.

Defendant argues that Plaintiffs waived their PACA trust rights because the Contract terms provide that payment for the onion shipments be made in installments that were scheduled for seven months following receipt and acceptance of the onions. The Contract called for delivery to be completed before September 1, 2016 and payments were to continue until March 20, 2017. Under these circumstances, the Court finds that the express terms of the Contract waive any entitlement Plaintiffs may otherwise have had to PACA's statutory trust provisions. *In re Altabon Foods, Inc.*, 998 F.2d 718 (9th Cir. 1993) (trust rights denied where pre-transaction agreements extended 45-60 day payment terms)*; Overton Distribs*, 340 F.3d at 367 (6th Cir.

5

2003).

### B. Notice of Intent

Even assuming that Plaintiffs were not precluded by the Contract payment terms from asserting PACA trust rights, Defendants argue that they did not preserve them. To take advantage of PACA's trust benefits where otherwise eligible, a produce seller must timely preserve them. *See In re Country Harvest Buffet Restaurants, Inc., 245 B.R. 650, 653 (9th Cir. BAP 2000); In re Marvin Props, Incl*, 854 F.2d 1183 (9th Cir. 1988). To preserve its rights, a seller must either: (1) timely provide a written notice of intent to buyer; or (2) if a seller holds a PACA license, place specific statutory language on its invoices. 7 C.F.R. § 46.46(f)(2); 7 U.S.C. § 499e(c)(4). Here, there is no assertion that Plaintiffs held a PACA license, nor that they placed the required language on the invoices. Plaintiffs did deliver a Notice of Intent, however, Defendant asserts the Notice was untimely under the PACA provisions. The Court agrees.

A plaintiff's failure to conform with PACA's requirements for preservation of trust rights warrants dismissal of its trust claims as a matter of law. *In re Milton Poulos, Inc*. 947 F.2d 1351 (9th Cir. 1991) (mere "substantial compliance" is not enough to preserve trust rights for a produce seller); *Lampa Farms, Inc., v. Anchor Warehouse Servx*. LLC, 2012 U.S. Dist. LEXIS 8594 (N.D. Cal. Jan. 25, 2012)(5:11-cv-62). *See Enoch Packing Co. v. Emerich & Fike*, 386 F.App'x 611 (9th Cir. 2010); *In re San Joaquin Food Serv., Inc.*, 958 F.2d 938, 940 (9th Cir. 1992).

Title 7 C.F.R. § 46.46(f)(2) requires that a notice of intent to preserve trust benefits is

timely only if:

> given to the debtor within 30 calendar days: . . . (ii) After expiration of such other time by which payment must be made as the parties have expressly agreed to in writing before entering into the transaction, but not longer than the time prescribed in paragraph (e)(2) of this section.

Title 7 C.F.R. § 46.46(e)(2) establishes that the maximum time for payment to be made is 30 days after receipt and acceptance of the commodity. As discussed above, with the exception of the August 28, 2016 payment, all other sums due under the Contract were to be paid more than 30 days after receipt and acceptance of the onions, vitiating any potential PACA trust rights Plaintiffs may have had. Even if that were not the case, and if the Contract terms were such that Plaintiffs qualified for PACA trust protection, they would have had to deliver their Trust Notice within 30 days of August 28, 2016 in order to preserve any such rights. *In re N. Mich. Fruit Co.*, 433 B.R. at 678. Plaintiffs served their Trust Notice on October 14, 2016, more than 30 days after the August 28, 2016 payment date. Therefore, under 7 U.S.C. § 499e(c)(3), Plaintiffs failed to timely serve Defendant with its Trust Notice and Plaintiffs are therefore not entitled to PACA Trust rights.

## CONCLUSION

The Court finds as a matter of law that under the Contract, Plaintiffs waived any entitlement to PACA trust benefits by setting the time for payment under the Contract to more than 30 days following delivery. Even if they had not waived their trust rights under the Contract, they forfeited any trust rights when they failed to timely preserve them. As a result, Plaintiffs are unable to state a claim for relief under PACA's trust provisions as a matter of law. Defendant's

Motion to Dismiss Plaintiff's Fifth and Sixth Causes of Action is therefore GRANTED and those causes of action are hereby DISMISSED with prejudice.

DATED this 29th day of June, 2017.

_____
Dee Benson
United States District Judge